# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 DEC 20 AM 8:28

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ROWENA LYNNE KNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 311-096 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Rowena Lynne Knight ("Plaintiff") appeals the decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I.    BACKGROUND

Plaintiff protectively applied for DIB and SSI on November 6, 2008, alleging a disability onset date of October 20, 2003. Tr. ("R."), pp. 62-63, 123-32. The Social Security Administration denied Plaintiff's applications initially, R. 62-63, and on reconsideration, R. 64-65. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on April 1, 2010. R. 36-57. At the hearing, the ALJ heard testimony from

Plaintiff, who was represented by counsel. See id. On June 14, 2010, the ALJ issued an unfavorable decision. R. 14-28.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant had not engaged in substantial gainful activity since October 20, 2003 (20 C.F.R. §§ 404.1571 et seq. & 416.971 et seq.).

2. The claimant had the following severe impairments: borderline intellectual functioning; bipolar disorder NOS; and drug and alcohol dependence in remission (20 C.F.R. §§ 404.1571 et seq. & 416.971 et seq.).

3. The claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925 & 416.926).

4. The claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: her bipolar disorder, depression, history of substance abuse and borderline intellectual functioning limit her to performing work activities with an SVP of 1 to 3. The claimant is capable of maintaining basic attention, concentration, and pace for simple tasks, but would have difficulty with detailed tasks and sustained concentration. She may have episodic interruptions during a normal workweek secondary to psychologically based symptoms, but she can pay enough attention to details to meet the general productivity requirements of the job within the same workday. Based on this RFC assessment, the claimant is capable of performing past relevant work as a cashier (20 C.F.R. §§ 404.1565 & 416.965).[1]

R. 22-27. Because the ALJ determined that Plaintiff could perform her past relevant work, the sequential evaluation process stopped, and the ALJ concluded that Plaintiff was not under a

---

[1]Notably, June 30, 2008, was the last date on which Plaintiff met the insured status requirements of the Social Security Act. R. 17. Accordingly, had the ALJ concluded Plaintiff was disabled on or after June 30, 2008, Plaintiff would only have been entitled to SSI, not to DIB. See id.

disability, as defined in the Social Security Act, from October 20, 2003 through June 14, 2010 (the date of the decision). R. 27. Plaintiff requested that the Appeals Council ("AC") review the ALJ's decision on August 11, 2010. R. 11-12.

Plaintiff subsequently filed a second application for SSI benefits on April 12, 2011. See Pl.'s Br., pp. 20-21 & Ex. A. Meanwhile, with regard to her November 6, 2008 application, the AC granted Plaintiff an extension of time of twenty-five days from June 16, 2011 to submit any new evidence she wanted considered. See R. 5-6. The AC denied Plaintiff's request for review of her November 6, 2008 application on August 9, 2011. R. 1-3. Two days later, on August 9, 2011, Plaintiff's April 12, 2011 application for SSI was approved, noting that her disability began on April 12, 2011. See Pl.'s Br., Ex. A.

When the Appeals Council ("AC") denied Plaintiff's request for review of her November 6, 2008 application, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal and remand of the adverse decision. Plaintiff argues that the ALJ erred by failing to give proper weight to the opinion of her licensed clinical social worker and by failing to attribute more weight to an examining psychologist than non-examining state agency psychologists. (See doc. no. 12 (hereinafter "Pl.'s Br."), pp. 14-20.) Plaintiff also argues that the case should be remanded under "sentence six" of 42 U.S.C. § 405(g) for consideration of new evidence, namely the favorable decision on Plaintiff's April 12, 2011 application for SSI and the evidence submitted in support of that application.[2] (Id. at 20-21; doc. no. 16 (hereinafter "Pl.'s Supp. Br."); doc.

---

[2]The Court notes that in Plaintiff's original brief, which was filed on March 28, 2012, she submitted only the subsequent disability determination on her April 12, 2011 application

3

no. 20 (hereinafter "Pl.'s Rep. Br.").) The Commissioner maintains that the decision to deny Plaintiff's applications for benefits was supported by substantial evidence and should be affirmed, and that there is no basis for remand under "sentence six." (See generally doc. no. 14 (hereinafter "Comm'r's Br."); doc. no. 19 (hereinafter "Comm'r's Resp. Br.").)

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence

in support of her argument for remand under sentence six. See Pl.'s Br., pp. 20-21 & Ex. A. On November 7, 2012, however, Plaintiff requested permission to file an out-of-time supplemental brief in which she presented additional evidence considered in her subsequent application for SSI, which is discussed in greater detail infra. (See doc. no. 15.) In an Order dated November 9, 2012, the Court granted Plaintiff's request and accepted her supplemental brief, and directed the Commissioner to file a response. (See doc. no. 18.) The Commissioner filed a response on November 16, 2012 (doc. no. 19), and Plaintiff filed a reply brief the same day (doc. no. 20).

is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions is not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.    DISCUSSION

### A.    New Evidence

There is a threshold issue in this case as to whether the Court may consider new evidence not included in the administrative record that Plaintiff has submitted in both her brief and her supplemental brief. The evidence consists of the following: (1) a one-page "Disability Determination and Transmittal" showing a favorable decision on Plaintiff's April 12, 2011 application for SSI; (2) a "Mental Impairment Questionnaire" completed by Manuel Lucero, M.D., on July 18, 2011 (hereinafter "the Questionnaire"); (3) Dr. Lucero's treatment notes

from March 4, 2010 through May 17, 2011; (4) a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment by Dr. Linda O'Neil completed on August 10, 2011; and, (5) a "Case Development Sheet" from Plaintiff's April 12, 2011 application for SSI. See Pl.'s Br., Ex. A; Pl.'s Supp. Br., Attach. 2-6.

Plaintiff contends that her case should be remanded to the ALJ for proper consideration of this new evidence pursuant to sentence six of § 405(g). Pl.'s Br., pp. 20-21; Pl.'s Supp. Br. Given that the first appearance of the evidence is before this Court – such that it is only now being considered for the first time – Plaintiff has properly framed her request for remand under sentence six. See Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267 (11th Cir. 2007) (noting that "settled precedents establish that a sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review").[3]

Turning to Plaintiff's request, in order to demonstrate that remand is appropriate under sentence six, "the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." Enix v. Comm'r of Soc. Sec., 461 F. App'x 861, 863 (11th Cir. 2012) (quoting Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)). The Court

---

[3]In contrast, under sentence four, when new evidence was properly submitted at the administrative level, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram, 496 F.3d at 1262. In other words, the relevant question under sentence four is whether "new, material, chronologically relevant evidence" was presented to the AC that "render[ed] the decision of the [ALJ] to deny benefits unsupported by substantial evidence [such that] the [AC] erred by denying review." Id. at 1261, 1266. Here, Plaintiff and the Commissioner have solely argued about the necessity of remand pursuant to sentence six. See Pl.'s Br., pp. 20-21; Comm'r's Br., pp. 10-11.

finds that none of evidence warrants remand because it is not "material" – "that is, relevant and probative so there is a reasonable possibility that it would change the administrative result." Enix, 461 F. App'x at 863.

In order to be material, new evidence must relate to the period on or before the date of the ALJ's decision. See id. at 863 (citing Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) (*per curiam*)) (providing that, in order to be probative of whether the person was disabled during the period under review, evidence must relate to that period); see also Lipscomb v. Comm'r of Soc. Sec., 199 F. App'x 903, 907 (11th Cir. 2006) (*per curiam*) (questionnaire related to the time period under consideration by ALJ because doctor "indicated that his questionnaire answers related to his perception of [claimant's] condition as it existed prior to the ALJ's decision" by basing the opinion on both his treatment records and those from other doctors, all dated during the relevant time period). Moreover, when the new evidence merely shows deterioration in a condition that the ALJ considered, it will not be considered material. See Enix, 461 F. App'x at 864 (treatment notes which showed that claimant continued to suffer from seizures showed at most that "condition was subsequently deteriorating" and did "not provide any new insight into whether her seizures were under control during the time period reviewed by the ALJ.").

Plaintiff argues that the favorable determination on her subsequent application for SSI is material because there are "conflicting decisions based upon the same evidence, and [the Commissioner] cannot be right and wrong at the same time." (Pl.'s Rep. Br., p. 3.) This is an absolutely puzzling contention, however, given that the decisions were obviously not based upon the same evidence: Plaintiff's second application for SSI contained more than a year's worth of treatment notes not submitted in support of her November 6, 2008 application, in

addition to the assessments completed by Dr. Lucero and Dr. O'Neil, all of which Plaintiff is now attempting to submit as "new" evidence justifying remand. In any event, as the Commissioner persuasively contends, "The disability determination does not provide any indication that Plaintiff's impairments were disabling before April 12, 2011 [the date of the second application]." Comm'r's Resp. Br., p. 3. The same is true of the evidence submitted in support of the April 12, 2011 SSI application.

First, with respect to Dr. Lucero's Questionnaire, while he states therein that he has treated Plaintiff "on an outpt. basis since 2008 at this CMHC," he does not state how long Plaintiff had the limitations he noted.[4] Pl.'s Supp. Br., Attach. 3, p. 1. Furthermore, Dr. Lucero does not provide any indication that Plaintiff's limitations existed during the time period under consideration by the ALJ, such as by basing his conclusions on particular treatment records from that time period. Cf. Lipscomb, 199 F. App'x at 907 (doctor indicated questionnaire answers related to time period under consideration by basing conclusions exclusively on treatment records from that period). Accordingly, Dr. Lucero's Questionnaire does not relate to the time period under consideration by the ALJ.

Dr. Lucero's Questionnaire is also not material because it shows, at most, that Plaintiff's condition may have deteriorated after the date of the ALJ's decision. Here, the ALJ concluded that Plaintiff's bipolar disorder was not disabling, in part, because Dr. Lucero's treatment notes indicated that Plaintiff improved and eventually became "stable" on her mental

---

[4]Dr. Lucero stated in the Questionnaire that Plaintiff was abnormal in the following areas: being able to understand, remember, and carry out simple instructions; getting along with the public, supervisors, and co-workers; dealing with changes in work setting; and making simple work-related decisions. Pl.'s Supp. Br., Attach. 3.

health medications as of January 7, 2010.[5] See R. 24 (citing R. 428-29, 482-83, 545-46). As in Enix, Dr. Lucero's Questionnaire does not undermine the ALJ's finding that Plaintiff's bipolar disorder was manageable with medication during the time period under consideration.[6]

---

[5] In finding that Plaintiff's bipolar disorder was not disabling, the ALJ also noted that Plaintiff reported that her bipolar disorder had improved with medication on February 24, 2004, as well. R. 24. Moreover, the ALJ noted that Plaintiff worked intermittently during the period of alleged disability, and reported to one of her doctors that she was looking for work on October 24, 2008. R. 25-26. Finally, the ALJ concluded, based on the statements by Plaintiff and her mother about Plaintiff's social functioning and daily activities, that Plaintiff "engages in purposeful activity *when she is motivated to do so*." R. 27 (emphasis in original).

[6] The same is true of Dr. Lucero's treatment notes from March 4, 2010 through May 17, 2011, which Plaintiff also submitted. See Pl.'s Supp. Br., Attach. 2. Plaintiff contends that "[i]f the additional evidence was not material to the ALJ's decision of June 14, 2010, then the treatment records from Community Mental Health Center would show a worsening of the bipolar disorder as asserted by Commissioner in his response, instead of continuing to treat the same illness without an increase or decrease in severity." (Pl.'s Rep. Br., p. 1.) A worsening of the disorder after the date of the ALJ's decision is precisely what the treatment records show, however. On January 7, 2010, Dr. Lucero concluded that Plaintiff was "stable" on her mental health medications (including Seroquel) after she reported no complaints or side effects and stated she was "doing pretty good." R. 545. This was the last visit in the record before the ALJ, but Plaintiff submitted evidence of subsequent visits in her supplemental brief. At her next visit on March 4, 2010, Dr. Lucero noted that Plaintiff remained "stable" and he planned to continue the same combination of medications. Pl.'s Supp. Br., Attach. 2, p. 2.

At a visit on April 29, 2010, however, Plaintiff reported that she had lost her insurance and could no longer afford Seroquel. See id. at 4. Notably, the ALJ then issued his unfavorable decision on June 14, 2010. R. 17-28. Starting with her next visit on June 23, 2010, Dr. Lucero's treatment notes reflect that Plaintiff's condition did begin to deteriorate as he tried other combinations of medications which were either ineffective or caused Plaintiff side effects. See Pl.'s Supp. Br., Attach. 2, pp. 6-13. On November 3, 2010, however, Plaintiff was put back on Seroquel, and by January 19, 2011, she reported to Dr. Lucero, "I am doing well if I take my medications." See id. at 14. What these treatment notes thus reflect is a condition that appeared treatable with medication – exactly as the ALJ concluded – but which deteriorated when a seemingly effective combination of medication was no longer available because Plaintiff lost her insurance. Accordingly, these treatment notes are also not material because they "do not provide any new insight" into whether Plaintiff's bipolar disorder was manageable with medication during the time period under consideration by the ALJ. See Enix, 461 F. App'x at 864.

See 461 F. App'x at 864. While Dr. Lucero stated in the Questionnaire that Plaintiff had "marginal response to meds [and] treatment," Pl.'s Supp. Br., Attach. 3, p. 1, he failed to provide any detail about how that statement related to his treatment history of Plaintiff. In any event, this vague comment is belied by Dr. Lucero's treatment notes during the relevant time period, which indicated that Plaintiff reported no complaints and appeared stable once he prescribed an effective combination of medication. See R. 545-48; Pl.'s Supp. Br., Attach. 2, p. 2. Accordingly, the Questionnaire lacks materiality on this basis as well.

The same reasoning applies to the Psychiatric Review Technique and Mental Residual Functional Capacity Assessment by Dr. O'Neil completed on August 10, 2011, in which she states that Plaintiff is "seriously limited" by her "bipolar or depression and SA [substance abuse] which seriously impacts functionin[g]." Pl.'s Supp. Br., Attach. 4, p. 14. Notably, Dr. O'Neil's assessment is based in large part on the "controlling weight" she afforded to Dr. Lucero's July 18, 2011 Questionnaire, as she noted that other evidence of record failed to sufficiently substantiate Plaintiff's allegations of disabling limitations. See id. Accordingly, as with Dr. Lucero's Questionnaire, there is no indication in Dr. O'Neil's assessment that the limitations she noted existed during the time period under consideration by the ALJ.

In sum, none of the new evidence Plaintiff submitted to the Court – Dr. Lucero's treatment notes from March 2010 through May 2011, his Questionnaire, and Dr. O'Neil's assessment – indicates that Plaintiff's impairments were disabling during the time period under

---

Moreover, even if the notes were material, they are dated March 4, 2010 through May 17, 2011, meaning, at the very least, Plaintiff could have submitted them to the AC, as she received an extension to submit new evidence through early July 2011, see R. 5-6. Plaintiff offers no explanation, however, much less "good cause," for failing to submit this evidence at the administrative level. See Enix, 461 F. App'x at 863.

consideration by the ALJ or undermines the ALJ's findings in that regard. Plaintiff has thus failed to show how a subsequent favorable decision based on this evidence and finding that Plaintiff was disabled as of April 12, 2011 – nearly a year after the ALJ's decision – would have any reasonable possibility of changing the administrative result with respect to her November 6, 2008 application.[7] Accordingly, the subsequent disability determination is not material, and none of the new evidence merits remand pursuant to sentence six.

### B. ALJ Gave Proper Weight to the Opinion of the Licensed Clinical Social Worker

As noted above, Plaintiff also contends that the ALJ erred by failing to give proper weight to the March 24, 2010 opinion of her licensed clinical social worker ("LCSW"), Rhonda Cumpsty, that Plaintiff could not maintain a job because of her mental health issues. Pl.'s Br., pp. 8, 14-17 (citing R. 572). By contrast, the Commissioner contends that the ALJ properly considered and discounted Ms. Cumpsty's opinion. Comm'r's Br., pp. 4-7. The Court finds that the Commissioner has the better argument.

According to the Social Security regulations, the only sources "who can provide evidence to establish an impairment" are licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified

---

[7]The Court notes that Plaintiff also submitted a "Case Development Sheet." See Pl.'s Supp. Br., Attach. 6. According to Plaintiff, this sheet shows that the State Agency which approved Plaintiff's April 12, 2011 SSI application cancelled her consultative psychological evaluation with Dr. Michael P. Rose, which was scheduled for August 10, 2011. See Pl.'s Supp. Br., p. 2. Plaintiff contends that this cancellation shows that "the State Agency relied on the opinion of the treating psychiatrist [Dr. Lucero] to make a favorable decision[.]" Id. at 4. As noted earlier, however, even if the subsequent SSI application was approved based on Dr. Lucero's Questionnaire (or any of the other proffered new evidence), the Court has concluded that the Questionnaire is not material to Plaintiff's November 6, 2008 application because it does not relate to the time period under consideration by the ALJ in that case.

11

speech pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). However, the ALJ should use a LCSW's medical observations when evaluating the severity of a claimant's impairments and how they affect her ability to work. Id. §§ 404.1513(d), 416.913(d) (allowing consideration of evidence from "other sources" to evaluate severity of impairment and impact on ability to work); SSR 06-03p, 2006 WL 2329939, at *2 (hereinafter "SSR 06-03p") (explaining that LCSWs are "medical sources who are not 'acceptable medical sources'" and are thus "other sources").

Furthermore, these opinions are to be evaluated based on the same criteria as the opinions of "acceptable medical sources." See SSR 06-03p, at *4; 20 C.F.R. §§ 404.1527(d), 416.927(d). Namely, the ruling specifies the following factors:

> How long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion.

SSR 06-03p, at *5.

According to SSR 06-03p, "the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources.'" Id. at *6. While the ALJ need not explicitly explain the weight given to opinions from these sources, he must "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning when such opinions may have an effect on the outcome of the case." Williams v. Astrue, No. 1:09-CV-02689-AJB, 2011 WL 1131328, at *13 n.32 (N.D. Ga. Mar. 28, 2011) (quoting SSR 06-03p at *6).

The issue in this case is not that the ALJ failed to address or even explain the weight afforded to the opinion of Plaintiff's LCSW, Ms. Cumpsty. Rather, the issue is that the ALJ discussed the opinion, but mistakenly attributed it to Plaintiff's treating psychiatrist, Dr. Lucero.[8] The ALJ discredited the opinion, which stated that Plaintiff was "unable to pursue gainful employment," because it was not supported by Dr. Lucero's treatment notes, which showed that Plaintiff's "mental health symptoms improved over time, and by January 7, 2010 he opined, 'she (the claimant) is stable on the mental health medications.'" R. 26 (citing R. 428-29, 482-83, 545-46, 572).

Plaintiff thus contends the ALJ erred because he failed to apply the factors in SSR 06-03p to Ms. Cumpsty's opinion and give it proper weight. Pl.'s Br., p. 17. Plaintiff also makes the related contention that the ALJ erred in discrediting the opinion based on Dr. Lucero's treatment notes. Id. As the Commissioner persuasively argues, however, the ALJ did afford proper weight to the opinion, discounting it because it "lacked support in the medical record and specifically referenc[ing] progress notes found in three exhibits to contradict the assessment." Comm'r's Br., p. 6.

As a preliminary matter, an ALJ's error does not warrant remand if the error was harmless. See Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam)

---

[8]Perhaps explaining the ALJ's error, on the cover letter prepared by counsel for Plaintiff for submitting the evidence to the Office of Disability Adjudication and Review, the opinion at issue is attributed to "treating physician, Dr. Manuel Lucero." See R. 568. Notably, Dr. Lucero and Ms. Cumpsty both treated Plaintiff at a facility called the Community Mental Health Center ("CMHC"). See R. 45, 545-62, 569-72. It does not appear from the record, however, that their treatment coincided, nor has Plaintiff provided any such indication in her brief.

13

(citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)) ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."). Moreover, as with all medical opinions, an ALJ is not required to afford weight to the opinion of an LCSW if it is inconsistent with the evidence of record. See Oates v. Astrue No. CA 08-0478-CG-C, 2009 WL 1154133, at *6 (S.D. Ala. Apr. 27, 2009) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).

As discussed earlier, the factors for weighing opinion evidence from "other sources" in SSR 06-03p are the same as those for the opinions of "acceptable medical sources." See id. at *4; 20 C.F.R. §§ 404.1527(d), 416.927(d). A mere mistake of fact about the application of these factors, however, does not mean that the ALJ afforded improper weight to an item of opinion evidence, particularly when the ALJ considered and discredited the opinion based on its inconsistency with the record as a whole. See Carson v. Comm'r of Soc. Sec. Admin., 300 F. App'x 741, 743 n.3 (11th Cir. 2008) (per curiam) (concluding ALJ's incorrect statement that treating physician had only seen claimant twice was harmless error, as "the record [did] not indicate that it affected the ALJ's decision," where the ALJ had discredited the opinion based on its inconsistency with the record as a whole); see also Harper v. Astrue, 1:09-CV-132-MP-GRJ, 2010 WL 6897654, at *9-10 (N.D. Fla. Sept. 30, 2010), adopted by 2011 WL 2784421 (N.D. Fla. July 12, 2011) (no remand required where ALJ partially discredited registered nurse's functional assessment, despite mistakenly attributing it to a doctor, because assessment was inconsistent with medical evidence of record and there was evidence of possible substance abuse or drug seeking by claimant).

Indeed, even when an ALJ fails to explicitly state the weight afforded to the opinion of an "other source," remand is not warranted if the Court can follow the ALJ's reasoning and conclude that the opinion would not have an impact on the outcome of the case. See Voronova v. Astrue, 3:11-CV-709-J-32JBT, 2012 WL 2384414, at *3-4 (M.D. Fla. May 7, 2012), adopted by 3:11-CV-709-J-32JBT, 2012 WL 2384044 (M.D. Fla. June 25, 2012) (court could follow ALJ's reasoning and assume chiropractor's opinion would not have effect on outcome of case where ALJ cited the exhibit containing the opinion, but otherwise focused on other parts of the record in concluding claimant's back impairment was not disabling, including objective evidence and the opinion of an orthopedist); cf. Naylor v. Astrue, 2:09-CV-844-FTM-DNF, 2011 WL 972508, at *8 (M.D. Fla. Mar. 18, 2011) (remand appropriate because ALJ altogether neglected to mention opinion of "other source" which was accompanied by "a series of written evaluations of [claimant]" and was "the most recent on record and achieved by thorough evaluation.")

With these principles in mind, the Court concludes that the ALJ's mistaken attribution of Ms. Cumpsty's opinion to Dr. Lucero was harmless error. Plaintiff is correct that the ALJ was factually mistaken about the source of the opinion, meaning that he did not know that it came from a LCSW rather than a psychiatrist, and he did not know that the source of the opinion had seen Plaintiff more frequently than Dr. Lucero had.[9] See Pl.'s Br., p. 16. As in Carson and Harper, however, the ALJ here considered the substance of the opinion and discredited it because it was contradicted by the objective medical evidence of record. There

---

[9]According to Plaintiff's testimony, she began seeing Ms. Cumpsty in 2007 at CMHC, "once a week in group and then once a month individually." R. 45. Plaintiff testified that she saw Dr. Lucero at CMH, "[m]aybe once a month, maybe once every two months, depending how they feel the medicine is reacting with me." R. 48.

is simply no indication that the source of the opinion or the frequency of treatment by that source affected the ALJ's decision in this regard. To the contrary, the Court can follow the ALJ's reasoning and conclude that knowing the proper source of the opinion would not have had an effect on the outcome of the case, as the ALJ afforded no weight to the opinion because it was contradicted by the objective medical evidence, which showed that Plaintiff's mental health issues had stabilized on her medication by January 2010.[10] See Voronova, 2012 WL 2384414, at *4.

In sum, the ALJ afforded proper weight to Ms. Cumpsty's opinion given its inconsistency with the record as a whole, and the mere mistake in attribution was no more than harmless error.

**C.  ALJ Gave Proper Weight to the Opinions of the Consultative Psychologist and the State Agency Psychologists**

**1.  ALJ Properly Discounted Consultative Psychologist's Opinions**

Plaintiff's second allegation of error is that the ALJ gave improper weight to the

---

[10]Plaintiff thus also contends that the ALJ improperly discredited Ms. Cumpsty's opinion based on Dr. Lucero's treatment notes that Plaintiff was "stable" on her mental health medications because "'stable' is not the same as 'improving.'" Pl.'s Br., p. 17. As Plaintiff concedes, however, see id., Dr. Lucero's treatment notes showed that Plaintiff was improving on her medication as of September 16, 2009, when Dr. Lucero made no modifications. R. 547. When she returned for a follow-up on January 7, 2010, Plaintiff had no complaints and Dr. Lucero concluded she was "stable," again making no modifications to her medication. R. 545. The ALJ cited the September 16, 2009 visit, among others, in noting that Plaintiff's "symptoms consistently improved over time with taking mental health medications." R. 24 (citing 428-29, 482-95, 545-62). The Court agrees with the Commissioner that "no other conclusion, than that the adjustments in Plaintiff's medications were finally efficacious, can be drawn after reading Dr. Lucerno's [sic] September 2009 note where he states Plaintiff was improving." Comm'r's Br., p. 7. Accordingly, the ALJ's finding that Ms. Cumpsty's opinion was contradicted by Dr. Lucero's treatment notes is supported by substantial evidence. The ALJ thus properly discredited the opinion. See Oates, 2009 WL 1154133, at *6.

opinions of a consultative psychologist, Marvin Long, Ph.D. Pl.'s Br., pp. 18-20. Specifically, Plaintiff states, "The ALJ did not reject this examining psychologist's opinions nor did he state any good cause why he gave only 'some weight' to this examining psychologist's opinions." Id. at 19. The Commissioner argues that the ALJ gave proper weight to Dr. Long's opinions. Comm'r's Br., p. 8. The Court finds the Commissioner has the better argument.

Notably, an ALJ "may reject any medical opinion if the evidence supports a contrary finding." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam). Here, Plaintiff's statement that the ALJ failed to explain why he only afforded "some weight" to Dr. Long's opinions is clearly belied by the record. The ALJ specifically noted that Dr. Long's opinions were "somewhat consistent with the record as a whole," but were not consistent with Dr. Lucero's January 7, 2010 treatment notes showing that Plaintiff stabilized on her medications.[11] R. 26 (citing R. 374-79, 438-47, 545).

Dr. Long examined Plaintiff twice: on August 8, 2007, R. 375-79, and on March 10, 2009, R. 439-45. In his August 8, 2007 examination, Dr. Long noted that Plaintiff's prognosis was "guarded to unfavorable primarily because of [her] report of so many clinical features such as avoiding people, anxiety, substance abuse, and severe depression." R. 378. Dr. Long similarly concluded on March 8, 2009, "Prognosis would have to be seen [as] unfavorable primarily because of the numerous complaints being reported by [Plaintiff] and the clinical features she indicated on the SS-77. She avoids all crowds, social situations, has panic feelings

---

[11]As discussed earlier, the ALJ discredited what he thought was Dr. Lucero's March 2010 opinion about Plaintiff's ability to work. It is clear from the decision, however, that the ALJ otherwise afforded significant weight to the objective medical evidence from Dr. Lucero – his treatment notes – including those from January 7, 2010 showing that Plaintiff had stabilized on her medications. See R. 26.

and stays nervous. She's severely depressed." R. 444. By January 7, 2010, however, Dr.

Lucero noted that Plaintiff was stable on her medications and she reported no complaints. R.

545. The ALJ thus discounted Dr. Long's opinions to the extent of their inconsistency with

the medical record, and substantial evidence supports his decision.[12]

### 2.  ALJ Properly Afforded Weight to State Agency Psychologists

Aside from her contention that the ALJ afforded improper weight to Dr. Long's

opinions, Plaintiff also contends that the ALJ erred in relying on the opinions of the State

Disability Determination Services psychologists.[13]  Specifically, Plaintiff argues that the state

agency psychologists opinions were incomplete because they did not consider three items of

evidence:  (1) Ms. Cumpsty's March 24, 2010 assessment, (2) Dr. Lucero's January 7, 2010

treatment notes, and, (3) a November 17, 2009 letter from the Georgia Department of Labor

Rehabilitation Services of Vocational Rehabilitation.  Pl.'s Br., p. 19.  According to Plaintiff,

---

[12]Plaintiff argues that Dr. Long's opinions were "consistent with Dr. Lucero's last treatment note that Ms. Knight was stable." Pl.'s Br., p. 20.  In essence, Plaintiff is again arguing that the ALJ erred in treating Dr. Lucero's conclusion that Plaintiff was "stable" as meaning that Plaintiff had improved.  As noted earlier, substantial evidence supports the ALJ's conclusion that Plaintiff had improved and was stable based on Dr. Lucero's January 7, 2010 treatment notes.  See supra Part III. B.

[13]Indeed, Plaintiff argues that "the weight to be given the opinions of the non-examining psychological experts cannot be greater than the weight given to the opinion of a multiptle-examining [sic] psychologist who performed his work at the request of the State Agency." Pl.'s Br., p. 19.  To the contrary, "In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  Here, the ALJ discredited Dr. Long to the extent his findings were inconsistent with the objective medical evidence of record.  See supra Part III. B. 1. Accordingly, the ALJ did not err in affording significant weight to the opinions the state agency psychologists.  See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (finding that, where ALJ provided good cause for discrediting treating physician, he did not err in crediting the reports of non-examining, non-treating physicians).

had the state agency psychologists "had the benefit of these documents, their opinions may have been different." Id. The Commissioner argues that the ALJ properly afforded weight to the opinions of the state psychologists, even in light of the aforementioned evidence. Comm'r's Br., pp. 8-10. The Court again finds the Commissioner has the better argument.

Under the regulations, the opinions of state agency medical doctors constitute acceptable medical sources upon which the ALJ may rely in determining the existence or severity of a claimant's ailments. See 20 C.F.R. §§ 404.1502, 404. 1527, 416.902, 416.927. Moreover, according to Social Security Ruling 96-6p, findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). Although ALJs are not bound by the findings of state agency doctors, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." Id. at *2. Finally, where the opinions of state agency medical consultants are consistent with the objective medical evidence as a whole, an ALJ may assign significant weight to such opinions. See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam).

Here, while it is true that the state agency psychologists did not consider the items of evidence that Plaintiff identifies, the ALJ did not err in concluding that their opinions were still consistent with the record as a whole, including the evidence that was not available to them. With respect to the first item Plaintiff identifies, Ms. Cumpsty's opinion, as discussed earlier, see supra Part III.B., the ALJ discredited the March 24, 2010 assessment by Ms. Cumpsty because it was inconsistent with the objective medical evidence, namely Dr. Lucero's January 7, 2010 note that Plaintiff was stable on her medications. Accordingly, the ALJ did not err in

affording weight to the state agency psychologists' opinions, despite their inconsistency with Ms. Cumpsty's assessment. See Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 874 (11th Cir. 2011) (*per curiam*) (substantial evidence supported ALJ's decision to afford weight to state agency consultants despite plaintiff's allegation that their conclusions were contradicted by physician's assessment, where ALJ discredited the physician's assessment because it was inconsistent with the record as a whole).

Similarly, substantial evidence supports the ALJ's conclusion that the state agency consultants' opinions were consistent with the next item Plaintiff identifies, Dr. Lucero's January 7, 2010 treatment notes showing that Plaintiff had stabilized on her medication. Notably, none of the state agency psychologists concluded Plaintiff's mental health issues were disabling. See R. 392, 396, 464, 478, 540. As the Commissioner thus persuasively contends, the January 7, 2010 treatment notes from Dr. Lucero, showing that Plaintiff's mental health issues had improved and stabilized with medication, only bolster the earlier conclusions by the state agency psychologists that Plaintiff's mental health issues were not disabling. Comm'r's Br., p. 10. Accordingly, the ALJ did not err by concluding that the opinions of the state agency psychologists were consistent with Dr. Lucero's January 7, 2010 treatment notes.

Finally, Plaintiff states that the state agency psychologists did not consider the November 17, 2009 letter from the Georgia Department of Labor Rehabilitation Services of Vocational Rehabilitation. Pl.'s Br., p. 19. Plaintiff contends that this opinion states that Plaintiff "is unable to engage in vocational rehabilitation." Id. The letter only provided, however, that Plaintiff's doctor had not yet cleared her to work, and that because Plaintiff, by applying for disability, was claiming "that she cannot work," the Department would not assist her with job placement. R. 340. Indeed, the letter advised Plaintiff to return for assistance

with job placement once she finished applying for Social Security benefits and was cleared by her doctor for employment. Id. In short, the letter simply shows that, as of November 17, 2009, a state agency elected not to help Plaintiff find employment because she was applying for disability benefits. Moreover, as the Commissioner points out, this letter is not a medical assessment of Plaintiff. Comm'r's Br., p. 10. Accordingly, this letter does not undermine the ALJ's conclusion that the state agency psychologists' opinions were consistent with the record as a whole.

Substantial evidence thus supports the ALJ's decision to discount the opinions of Dr. Long. Moreover, the ALJ did not err by assigning significant weight to the opinions of the state agency psychologists and substantial evidence supports his conclusion that these opinions were consistent with the record as a whole.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 20th day of December, 2012, at Augusta, Georgia.

                                    _____
                                    W. LEON BARFIELD
                                    UNITED STATES MAGISTRATE JUDGE

21